**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

<u>Donna Marie Conner</u>

    v.                                              Civil No. 09-cv-452-PB

<u>United States of America, et al.</u>[1]

### REPORT AND RECOMMENDATION

Donna Marie Conner has filed this civil rights action seeking injunctive, declaratory and monetary redress. Because plaintiff is proceeding pro se and in forma pauperis, the matter is before me for preliminary review to determine, among other things, whether the complaint states any claim upon which relief might be granted. <u>See</u> 28 U.S.C. § 1915(e)(2); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(1)(B).

<u>Standard of Review</u>

Under this Court's local rules, when a person commences an action pro se and in forma pauperis, the Magistrate Judge conducts a preliminary review. LR 4.3(d)(2). In conducting the

---

[1] In addition to the United States of America, plaintiff has named York County, Virginia and the Commonwealth of Virginia as defendants to this action.

preliminary review, the Court construes all of the factual assertions in the pro se pleadings liberally, however inartfully pleaded.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals).  This review ensures that pro se pleadings are given fair and meaningful consideration.

To determine if a pro se complaint states any claim upon which relief could be granted, the Court must consider whether the complaint, construed liberally, Erickson, 551 U.S. at 94, "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Inferences reasonably drawn from the plaintiff's factual allegations must be accepted as true, but the Court is not bound to credit legal conclusions, labels, or naked assertions, "devoid of 'further factual enhancement.'" Id. (citation omitted). Determining if a complaint sufficiently states such a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950 (citation omitted).

## Background

Prior to 2006, plaintiff Donna Conner was living in Virginia. In Virginia, Conner had been employed at a Head Start organization. While at that organization, Conner filed a grievance against her supervisor and won. Later, Conner worked at another Head Start program in York County, Virginia. Conner discovered that her supervisor in York County was related to her previous supervisor. As a result, Conner claims her York County supervisor discriminated against her, ultimately forcing Conner to quit her job. Conner also alleges that her York County supervisor was married to a York County Police officer, which

allowed the York County Police Department and the York County supervisor to conspire to place Conner into "deep poverty," by ensuring that Conner's subsequent employers, after Head Start, also discriminated against her, which prevented her from earning an income. Conner also alleges that the York City Police refused to prosecute the discriminatory acts taken against her.

Conner states that while she was living in a York County apartment, a maintenance worker, at the behest of the Head Start supervisor, broke into and hid video surveillance cameras in the apartment. A "sensitive" video of Conner was taken by the defendants without her knowledge. The maintenance man that the supervisor paid to install the camera was also paid, according to Conner, to steal her writings, including a manuscript and other written materials. The York County police refused to investigate or prosecute the maintenance man for breaking into Conner's apartment or for theft.

In addition to being unable to keep a job, due to the York County Head Start supervisor's machinations, Conner claims that the York County officials who were working against her caused the air in her apartment to become poisonous, which caused her respiratory distress. In January 2006, afraid that staying in

Virginia would kill her as a result of the air poisoning, Conner fled with her son to Maryland.  Conner soon discovered that the York County officials had followed her to Maryland and were causing her to be poisoned there as well.  Conner returned to Virginia in April 2006.

In July 2009, Conner, still being poisoned and subjected to other abuses in Virginia, went to Norwalk, Connecticut.  In Norwalk, she lived in a homeless shelter.  After a couple of weeks at the shelter, Conner noticed that the behavior of the shelter staff and residents toward her began to change.  Conner also believed that the poisoned air she was subjected to in Virginia was being introduced in Connecticut.

Conner went to the local police to report that she was being stalked.  At the police station, one of the officers was looking at information about her on the computer.  Conner discovered that she had been placed on a "federal list."  Conner states that upon discovering this information, the Norwalk police officers politely dismissed her and did not take any further action to investigate or prosecute her persecution by York County officials.

Some time after her visit to the Norwalk Police, Conner

claims that someone in the shelter began to walk through the shelter hallways and speak about things that had occurred to Conner in Virginia.  Further, someone at the shelter said "someone is going to get hurt," while looking at her.  Conner believes this was a message to her sent by York County officials, and that she was in danger.  Conner believes that York County would pay someone to watch her, report to York County officials about her whereabouts and activities, and harm her.

   Afraid for her safety, Conner left Connecticut and went to Manchester, New Hampshire.  Conner took up residence at the New Horizons shelter in Manchester.  After two weeks, Conner states she again started to experience problems because her persecutors in York County somehow became aware of her whereabouts.  Conner believes that men at the shelter continuously leered at her, although she dressed more conservatively than many other women at the shelter, that the poison material was at the Manchester shelter, and that it became obvious that shelter staff were being paid to report on her actions and to do her harm.  Conner also came to believe that video from the illegal surveillance of her home in Virginia was circulating among shelter staff and residents.

Conner went to the Manchester Police Department to report that she was being stalked. The Manchester Police heard her out but told Conner they needed more evidence to initiate a prosecution.

Conner returned to the shelter. One night, a woman at the shelter took a picture of Conner with a cell phone without Conner's permission. The woman also started to discuss sensitive matters with Conner. Conner construed these events to mean that the woman had seen the illegal video of her and was also reporting her whereabouts to people in York County. Conner returned to the police with this information, but the police declined to act on it.

Conner reports that upon entering the shelter in Manchester, she was in possession of computer discs containing some of her writing. A woman whom Conner had befriended in the Norwalk shelter arrived at the Manchester shelter one day. Shortly thereafter, both the woman and the discs disappeared. Conner believes the woman took them and that she is involved in the conspiracy with York County. Conner notes that the York County Head Start supervisor knew about Conner's writing and the computer discs, and also had relatives who were clergy. Further,

Conner met a couple in Virginia who were religious, and who tried to coax Conner to come visit them at their home in Connecticut, in the same part of that state where Conner first met the woman at the Norwalk shelter. Finally, the woman who Conner met in Connecticut who then arrived at the Manchester shelter also purported to be religious.

Conner reported the missing discs to the Manchester Police, and provided the police with a statement from a librarian who had helped her access documents on the disk indicating that she had, in fact, possessed the discs. The police disregarded Conner's complaint and threw out the librarian's statement.

Conner seeks the appointment of counsel,[2] and an injunction ordering the investigation and prosecution of those who have harmed her and committed criminal acts and civil rights violations against her. Conner also seeks twenty billion dollars in money damages.

## Discussion

I. <u>Claims Against the United State of America</u>

Plaintiff may seek redress from federal government officials

---

[2]Because I recommend dismissal of this action in its entirety, I deny Conner's request for counsel as moot, without prejudice to renewal should this recommendation not be accepted.

who violate her federal constitutional rights under <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 338 (1971), which creates a cause of action against federal officers, acting in their individual capacities, for constitutional violations. While a <u>Bivens</u> action allows constitutional claims to be raised against federal officials in their individual capacities, <u>Bivens</u> does not override the federal government's sovereign immunity which prohibits suits against the United States, its agencies, or federal officers sued in their official capacities. <u>McCloskey v. Mueller</u>, 446 F.3d 262, 271-72 (1st Cir. 2006). Conner cannot bring suit against the United States of America, and I therefore recommend that her claims against the United States be dismissed.

II.  <u>Claims Against Commonwealth of Virginia and York County</u>

    A.  <u>Section 1983 Claims</u>

Section 1983 creates a cause of action against those who, acting under color of state law, deprive persons of their federal constitutional or statutory rights. <u>See</u> 42 U.S.C. § 1983[3];

---

[3]42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  Because Conner's claims allege violations of federal constitutional law effected by defendants Commonwealth of Virginia and York County, Virginia, acting under the authority of state law, those claims arise under § 1983.

    B.    Eleventh Amendment

Conner has sued the Commonwealth of Virginia for damages as well as injunctive relief.  The Eleventh Amendment to the United States Constitution confirms the sovereignty of states by shielding them from lawsuits by individuals absent their consent. See Frew v. Hawkins, 540 U.S. 431, 437 (2004) (citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996)); Maitilasso v. Timberlake, 76 F.3d 374, at *1 (4th Cir. 1996) (acknowledging Commonwealth of Virginia's Eleventh Amendment immunity from suit under § 1983).  Because the state is immune from suit, I recommend that the claims against the Commonwealth of Virginia be dismissed.

    C.    Right to Prosecution

Conner has claimed that defendants denied her right to

---

        rights, privileges, or immunities secured by the
        Constitution and laws, shall be liable to the
        party injured in an action at law . . . .

investigation and prosecution of those who have committed crimes against her.  As there is no federal constitutional right to have criminal wrongdoers brought to justice, there is no private right of action under § 1983 for the failure to prosecute a particular crime.  See Leeke v. Timmerman, 454 U.S. 83, 87 (1982); Nieves-Ramos v. Gonzalez-De-Rodriquez, 737 F. Supp. 727, 728 (D.P.R. 1990) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or non prosecution of another.")).  Conner cannot, therefore, maintain an action against the defendants for their failure to investigate or prosecute alleged criminal acts and I recommend that these claims, seeking monetary, injunctive, and declaratory relief, be dismissed.

    D.    Equal Protection

Throughout her pleadings, Conner asserts that she has been discriminated against on the basis of her race and religion.  Conner asserts that she is black and has been discriminated against by both black and white people for getting angry, as people only tolerate anger from white people and not black people.  Conner further asserts that she is being prosecuted on the basis of her religion, which she has not identified, because

11

those who are involved in persecuting her are religious Christians or related to religious Christians.

The Equal Protection clause of the Fifth Amendment guarantees that "all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); see Toledo v. Sanchez, 454 F.3d 24, 33 (1st Cir. 2006). In order to establish a claim for an equal protection violation, Conner must allege that the defendants gave differential treatment to persons who were similarly situated to her, but who were not members of her race or religion. See Overton v. Bazzetta, 539 U.S. 127, 138 (2003) (The Equal Protection Clause protects against invidious discrimination based on membership in a protected class). Conner has generally alleged discrimination, but has not identified any specific facts that allow me to infer that any of the treatment she allegedly received from the defendants was based on invidious racial or religious description. Conner's bald suspicions and assertions of discriminatory intent, unsupported by specific factual allegations, are insufficient to state a claim for a violation of the Equal Protection Clause, and I recommend dismissal of Conner's equal protection claims.

<u>Motion Requesting Immediate Movement</u>

Since filing this action, Conner has filed a "Motion Requesting Immediate Movement" (document no. 4) seeking criminal prosecution of her alleged persecutors.  As I recommend dismissal of this action, I deny the motion as moot, subject to renewal should this recommendation not be accepted.

<u>Conclusion</u>

For the foregoing reasons, I recommend the dismissal of this action in its entirety, as Conner has failed to state any claim upon which relief might be granted.  <u>See</u> LR 4.3(d)(1)(B)(i).  Any objections to this report and recommendation must be filed within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  <u>See</u> <u>Unauth. Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:    April 9, 2010

cc:      Donna Marie Conner, *pro se*

JM:jba